The Honorable Gene Jeffress State Representative and Senator-Elect 1483 Ouachita 47 Louann, Arkansas 71751-8761
Dear Representative Jeffress:
 I am writing in response to your request for an opinion on three questions concerning the denial of a Freedom of Information request for certain records of the "Arkansas Department of Economic Development" ("ADED") and the Governor's office. Specifically, you have attached with your request copies of two Freedom of Information ("FOIA") requests made by Tony Huffman, Camden City Attorney, one to the Governor's Office and one to ADED for "all scoring and evaluation records regarding all 157 Delta Regional Authority ("DRA") Grant proposals and applications that were recently submitted (July 15, 2002, deadline) to the Arkansas Department of Economic Development." You have also attached with your request copies of the responses by the Governor's office and the ADED to these requests. The Governor's office responded by stating that: "[a]ny documents in the possession of the Governor's Office are exempt from disclosure under the `working papers' exemption to the Act found in Ark. Code Ann. § 25-19-105(b)(7). Therefore, your request must be denied." The ADED responded by stating that: "[s]ince we are not the Custodian of Records for this project, we are unable to furnish you with the information requested. All records pertaining to this subject matter have been forwarded to Governor Mike Huckabee's office."
You pose three questions relating to these facts as follows:
 1. Are any documents in the possession of the Governor's Office FOI-exempt as "working papers?"
 2. Are documents, scored and evaluated by one branch of State government, i.e., ADED, able to be totally shifted to another branch, i.e. the Governor's Office, after initial compilation in the former, and thereby gain an FOI exemption?
 3. Are the requested DRA Grant proposals/applications scorings and evaluations FOI-exempt? A) If located at ADED? B) If located in the Governor's Office?
RESPONSE
In my opinion the answer to your first question is "no." The answer to your second question will depend upon the applicable facts but, as a general matter, the FOIA cannot be thwarted by the transfer of open public records to an agency with an FOIA exemption. In my opinion, a court would analyze the question on a case-by-case basis, taking into consideration all the pertinent facts. The answers to your two-part third question are, in my opinion, "no" and "yes," respectively. In my opinion the records in question are not exempt if located at ADED, but are exempt if located at the Governor's office. The question of whether the transfer of records by the ADED violates the FOIA would involve an analysis of facts outside the scope of an Attorney General's opinion. In any event, however, it appears a separate statute requires ADED to keep a copy of the records in question in its possession, thus rendering them open to public inspection.
Question 1 — Are any documents in the possession of the Governor's OfficeFOI-exempt as "working papers?"
In my opinion the answer to this question is "no." I interpret your question as inquiring whether all documents in possession of the Governor's office are exempt as "working papers." The Arkansas Freedom of Information Act grants citizen access to "public records," which are broadly defined in the FOIA at A.C.A. § 25-19-103(5)(A) (Repl. 2002). Certain exemptions to the public access requirement are granted in A.C.A. § 25-19-105. Among these is the exemption found at A.C.A. §25-19-105(b)(7), which exempts "[u]npublished memoranda, working papers, and correspondence of the Governor. . . ."
As my predecessor had occasion to note in 1998, however:
 There is no support in the law for the proposition that the mere possession of a record by the governor's office transforms that record into the governor's "working paper." See Op. Att'y Gen. No. 97-369. . . . I cannot state as a matter of law generally that all documents in the governor's possession are exempt from disclosure under the "working papers" exemption — particularly when many such documents would be disclosable under the more specific provisions of the FOIA, such as the personnel records provisions.
Opinion No. 98-234 (emphasis added).
I concur in the view of my predecessor that not every document possessed by the Governor's office is properly classified as "unpublished memoranda, working papers [or] correspondence of the Governor. . . ." There may be any number of documents in the Governor's possession that may not be properly categorized into one of these three enumerated classes of records. An example would be the personnel records discussed in Opinion 98-234, quoted above. Another example might be certain types of fiscal records held by most state agencies, including the Governor's office.
That being said, it is true that a number of documents in the possession of the Governor will qualify for the A.C.A. § 25-19-105(b)(7) exemption. In this regard, the exemption has been held to apply not only to documents created by the Governor, but also to records in his possession received from third parties. As stated in Op. Atty. Gen. No. 92-346 with regard to the "correspondence" portion of the exemption:
 It thus appears that the exception for "correspondence of" the named officials, i.e., the Governor, members of the General Assembly, Supreme Court Justices, and the Attorney General, includes both copies of letters that the officials have written to others, as well as letters received by the officials. The Mars case, supra, indicates that any question in this area has been resolved in favor of applying the exemption to both copies of letters written by the Governor (and other named officials) and letters written to him. As a general matter, therefore, it is my opinion that the letters written to the Governor would be exempt from disclosure under the FOIA.
Op. Att'y. Gen. 92-346 at 2, citing Bryant v. Mars, 309 Ark. 480,830 S.W.2d 879 (1992). See also Op. Att'y. Gen. 93-166 (stating that "[t]he exemption under 25-19-105(b)(7) for "correspondence of" the named officials may, in my opinion, reasonably be construed to encompass letters received by those officials and copies of letters written by them).
The same point is discussed in Watkins, The Arkansas Freedom of Information Act, (mm Press 3rd Ed. 1998) with regard to the "working papers" portion of the exemption:
 . . . it seems obvious that records prepared or collected by individuals not covered by subsection (b)(7) might be forwarded to and used by an official listed in the exemption or his or her staff. In this situation, the documents surely become "working papers" of the official, even though they originated elsewhere. Cf. Bryant v. Mars, 309 Ark. at 486, 830 S.W.2d at 872 (records of private consultants" became working papers of the Attorney General" and were therefore exempt).
Id. at 209, fn 188.
Documents thus do not have to originate within the Governor's office to be characterized as his "working papers." In my opinion, however, in response to your first question, characterization of all documents in the possession of the Governor's office as "working papers" of the Governor is not supported in law.
Question 2 — Are documents, scored and evaluated by one branch of Stategovernment, i.e., ADED, able to be totally shifted to another branch,i.e. the Governor's Office, after initial compilation in the former, andthereby gain an FOI exemption?
The answer to this question will necessarily depend upon an analysis of the particular facts surrounding the records in question. I have not been provided with a complete statement of the facts surrounding the transfer of the records in question, and am not empowered as a fact finder in the issuance of official Attorney General opinions. I will address the law and the few facts I have been provided concerning the scoring and evaluation of the Delta Regional Authority grant applications in response to your third question below. First, I will state some general principles applicable to the broad issue you raise in your second question. In my opinion the facts will be controlling of the issue. It is conceivable that different factual circumstances will lead to different results.
As an initial matter, as my predecessor stated in Op. Att'y Gen.97-369:
 It would seem obvious that the Governor's working papers exemption should not be construed to apply to the work product of all executive branch employees, even when they are working on projects of interest to the Governor. So interpreted, the FOIA would, in effect, become inapplicable to the executive branch of government.
Opinion No. 97-369 at 3.
In my opinion, similarly, the Governor's office may not be used as an actual repository for otherwise open executive branch records for the purpose of shielding them from public inspection. Such a result would be clearly contrary to the FOIA. Whether this has occurred in a given instance, however, will depend upon all the attendant facts.
For example, at one end of a spectrum of possible facts is the situation in which a state agency, performing a duty uniquely related to its functions, receives an FOIA request for documents related to that duty. After the agency receives the FOIA request, it removes the documents from its possession and places them with an entity covered by the §25-19-105(b)(7) exemption. The receiving entity does not have primary duties with regard to the subject matter of the documents, but merely receives them from the other state agency. There is little doubt, in my opinion, that a court faced with the issue would conclude that such a transfer violates the FOIA. Indeed, a prosecuting attorney might view these facts as sufficient to support a charge of tampering with a public record. See A.C.A. § 5-54-121 (Supp. 2001). The FOIA cannot be thwarted in this manner.
On the other end of the spectrum of possible facts, however, is a scenario in which a state agency must for some clerical or other reason temporarily create or possess documents at the request of an entity covered by the (b)(7) exemption in furtherance of a duty placed upon the latter entity. The state agency performs its requested function and transfers the records to the entity covered by the (b)(7) exemption so that the latter entity may perform its duty. The state agency does not keep copies of the documents and no separate statutory mandate requires it to keep copies.[1] After the records are transferred, an FOIA request is made upon the state agency and the entity covered by the (b)(7) exemption for the records. There is no evidence that the records were transferred to the latter entity for purposes of defeating public access to the records. At this end of the spectrum, it is unlikely, in my opinion, that a court would conclude that denial of access to the records was contrary to the FOIA.
Obviously, there may be any number of factual variations along the spectrum bounded by the two extreme examples above. Because I cannot act as a fact finder in this matter, I cannot state where the controversy giving rise to your question falls along this spectrum. In my opinion, the legality of transferring records from an agency that does not have the benefit of the § 25-19-105(b)(7) exemption to an agency covered by that exemption will depend upon all the facts. In my opinion a court faced with the question would consider: 1) whether the FOIA request was made before or after the transfer; and 2) the primacy of each agencies' duties with respect to the subject matter of the records. In my opinion, if an FOIA request was made for the records, and then those records were transferred, it is likely that a court would find that the FOIA had been violated. Although the FOIA itself does not contain any record retention requirements (Ops. Att'y Gen. 2001-340 and 2000-220), I have previously opined that the destruction of records after the receipt of an FOIA request is a violation of the FOIA. See Op. Att'y Gen. 2000-220. Seealso Op. Att'y Gen. 95-261. In my opinion the transfer or removal of public records after receipt of an FOIA request is similarly impermissible. See, e.g., Op. Att'y Gen. 93-263 (permitting removal of public records held by school district after receipt of an FOIA request would be contrary to the FOIA). In my opinion a transfer of records after receipt of an FOIA request that has the effect of denying public access is a violation of the FOIA.
If no FOIA request was made prior to the transfer of records, the issue is not as clear. In my opinion the question will turn upon all the relevant facts, including the primacy of each agencies duties with regard to the records. I have not found any case law or Attorney General opinions squarely addressing this issue. One case of the Arkansas Supreme Court does provide some guidance. In Swaney v. Tilford, 320 Ark. 652,898 S.W.2d 462 (1995), the Arkansas Supreme Court required the Arkansas Development Finance Authority ("ADFA"), to obtain copies of audit worksheets from a private accountant under contract with ADFA in order to satisfy a citizen FOIA request. Even though ADFA was not in actual possession of the public records, the court held that the "burden [should] be placed on the appropriate state agency to make arrangements for reasonable access to the records. . . ." The court focused on the fact that the records fell within the definition of "public records" under the Act, and thus found a responsibility on the part of ADFA to obtain the records from the private accountant to satisfy the citizen's FOIA request. Swaney stands for the proposition that a state agency can be a "custodian" of public records under the FOIA even when it is not in actual physical possession of the records. The holding of the Swaney case was recently codified in a new definition of "custodian" in the FOIA.See A.C.A. § 25-19-103(1)(A) (Repl. 2002) ("[c]ustodian with respect to any public record, means the person having administrative control of that record"). See also Report of the Electronic Records Study Commission, "Section-by-Section Analysis, § 1 (the new definition of custodian "is consistent with Arkansas Supreme Court decisions indicating that records not physically located at an agency but within its administrative control are subject to the FOIA").
The answer to your second question, therefore, may depend upon whether the agency transferring the records is nonetheless a "custodian" of the records with "administrative control" over them. The FOIA does not elaborate on the words "administrative control." In my opinion a court faced with this issue would analyze the primacy of the duties of each agency with respect to the records. If the transferring agency has primary responsibility over the subject matter of the records, or even more clearly, a statutory duty in connection with the records in question (a point emphasized in Swaney), then the agency likely retains "administrative control" of the records even after the transfer to another agency. Under such circumstances, the transferring agency may have a duty either to retain copies of the records or to obtain copies of the records from the other agency to satisfy the FOIA request. If the transferring agency does not have primary responsibility for the subject matter of the records, or any statutory duty in connection therewith, it may not have "administrative control" of the records sufficient to render it a custodian of those records. Again, the issue will depend upon all the pertinent facts.
Question 3 — Are the requested DRA Grant proposals/applications scoringsand evaluations FOI-exempt? A) If located at ADED? B) If located in theGovernor's Office?
In my opinion the answer to your third question is A) "no," the records are not exempt if located at ADED; and B) "yes," the records are exempt if located in the Governor's office. I am aware from your correspondence that ADED asserts that it no longer has possession of the documents in question. There is a separate state statute (outside the FOIA) however, which I believe requires ADED to keep a copy of such records.
In my opinion it will be helpful to first set out some of the applicable federal and state law regarding the Delta Regional Authority and the procedure for evaluating the grants at issue.
The United States Congress created the "Delta Regional Authority." See7 U.S.C. §§ 2009aa-1 to 2009aa-13 (Supp. 2002). The Authority is comprised of one federal member, to be appointed by the President, and the Governor of each state in the region that participates in the Authority.7 U.S.C. § 2009aa-1 (a)(2)(A) and (B). One of the duties of the Authority is to "approve grants for the economic development of the region. . . ."7 U.S.C. § 2009aa-1(d)(1). The required purposes of the grants, priority of funding and the selection criteria are set out, respectively, at7 U.S.C. § 2009aa-2(a); 7 U.S.C. § 2009aa-2(b)(2); and 7 U.S.C. § 2009a-7.
Section 2009aa-8(b) and (c) govern the initial evaluation of grant proposals. These subsections state: "An application for a grant or any other assistance for a project under this subchapter shall be madethrough and evaluated for approval by the State member of the Authority representing the applicant." (Emphasis added). The "State member" is the Governor. See 7 U.S.C. § 2009aa-1(a)(2)(B). Subsection (c) of7 U.S.C. § 2009aa-8 states that: "[a]n application for a grant or other assistance for a project shall be approved only on certification by theState member that the application for the project — (1) describes ways in which the project complies with any applicable State development plan; (2) meets applicable criteria under section 2009aa-7 of this title; (3) provides adequate assurance that the proposed project will be properly administered, operated and maintained; and (4) otherwise meets the requirements of this subchapter." (Emphasis added). Again, the "State member" is the Governor. 7 U.S.C. § 2009aa-1(a)(2)(B). "On certification by a State member of the Authority of an application for a grant . . . an affirmative vote of the Authority under section 2009aa-1(c) of this title shall be required for approval of the application."7 U.S.C. § 2009aa-8(d). The Delta Regional Authority therefore takes the final vote to approve grant applications after evaluation and certification by the Governor of the state representing the applicant.
The Arkansas Department of Economic Development is not mentioned in this federal process. In addition, state law does not invest the Arkansas Department of Economic Development with any authority over this process. I should note, however, that there is a newly created commission, the "Arkansas Delta Development Commission" ("ADDC"), which is invested with some statutory duties with regard to grants awarded by the Delta Regional Authority. The "Arkansas Delta Development Commission" is created at A.C.A. § 15-4-2602 (by virtue of Act 1601 of 2001) and it is charged with the duty, among other things, of "[being] the chief advisory and oversight body in conjunction with the Department of Rural Services regarding representation of the state to the Delta Regional Authority" and "[a]dminister[ing] any federal block grant funds submitted to the state under the Delta Regional Authority appropriation or action of the Delta Regional Authority Board. . . ." This newly created Commission, therefore, is invested with duties regarding the grants awarded by the Delta Regional Authority. The scope of the duties conferred under the statute is not entirely clear. Although the ADDC is authorized to employ an executive director, who may in turn hire a staff (see A.C.A. § 15-4-2604), it does not appear that any 2001 legislation makes an appropriation for this purpose. I do not have any facts, moreover, as to whether ADED staff was acting under the auspices of the ADDC in this matter. It is my understanding that there is some controversy over the ADDC's involvement or lack of involvement in the process. See Amy Schlesing, "Huckabee steered Delta grant process around public panel," Arkansas Democrat-Gazette, August 23, 2002, at 1A.
In any event, according to my understanding, the Governor delegated some initial responsibility to score and evaluate grant applications to personnel at the Arkansas Department of Economic Development. The first part of your third question is whether the "scorings and evaluations" are exempt from public inspection and copying under the FOIA if located at ADED. It is my opinion that such records would be open to public inspection if located at ADED.
Even though, as discussed earlier, the A.C.A. § 25-19-105(b)(7) "working papers" exemption can include documents received by the Governor from other sources, the reverse it not true. That is, it is clear that the same documents in the hands of a state entity not covered by the (b)(7) exemption are open to public inspection. See Op. Att'y. Gen. 93-166, stating that: "I cannot conclude, however, that [the (b)(7) exemption] generally includes correspondence in the hands of other officials not mentioned in this subsection. See also, Ops. Att'y. Gen. 2001-172 ("I have concurred with my predecessor's opinion that the "working papers" exemption that is available to the governor and certain other state officials under A.C.A. § 25-19-105(b)(7) does not follow those records into the hands of other officials not mentioned in 105(b)(7)"). See also
Op. Att'y Gen. No. 2000-257, n. 3, ("[a]s reflected in my predecessor's opinion, the "working papers" exception applies only to the referenced documents in the hands of the listed officials, their staffs and private consultants").
If the relevant records were located at the Arkansas Department of Economic Development, therefore, the A.C.A. § 25-19-105(b)(7) exemption would not cover them. See Op. Att'y. Gen. 97-369 (documents in possession of Department of Finance and Administration employees, even when working on project established by the Governor, were not shielded by the (b)(7) exemption).
There is a separate exemption in the FOIA for certain records held by the Arkansas Economic Development Commission ("AEDC"), the governing board of the ADED. It exempts:
 (9)(A) Files which, if disclosed, would give advantage to competitors or bidders, and records maintained by the Arkansas Economic Development Commission related to any business entity's planning, site location, expansion, operations, or product development and marketing, unless approval for release of such records is granted by the business entity.
 (B) Provided, however, this exemption shall not be applicable to any records of expenditures or grants made or administered by the commission and otherwise disclosable under the provisions of this chapter.
A.C.A. § 25-19-105(9)(A) and (B). (Emphasis added.)
It does not appear that this exemption would shield any records in the possession of ADED with regard to the Delta Regional Authority grants. In my opinion, therefore, to the extent the records were located at ADED, they would be open to public inspection and copying.
According to the correspondence you have enclosed, the records are not currently in the possession of the ADED. The Department asserts in its response to the FOIA request that it is "not the Custodian of Records for this project. . . ." ADED also adds that "[a]ll records pertaining to this subject matter have been forwarded to Governor Mike Huckabee's office." It appears, therefore, that ADED no longer has physical custody of the records in question. The correspondence enclosed with your request does not specify whether the records were transferred before or after receipt of the FOIA request. As discussed earlier, if the records were transferred after the receipt of the FOIA request, a violation of the FOIA has likely occurred. If the records were transferred prior to the receipt of any FOIA request, the question under the FOIA turns upon whether ADED is nonetheless the "custodian" of the records with administrative control over them even though not in actual physical possession of the records. I cannot determine this issue without reference to all the attendant facts. As noted above, federal law places responsibility over the DRA grant applications squarely within the Governor's purview, not the ADED's purview. This fact supports ADED's assertion that it is not the "custodian" of the records. State law, however, does require the Arkansas Delta Development Commission "ADDC" to "administer any federal block grant funds submitted to the State under the [DRA] appropriation. . . ." A.C.A. § 15-4-2607(2) (Supp. 2001). See
discussion, supra. If the records were created by ADED staff in connection with this statutory mandate, ADED would in my opinion be properly characterized as the custodian of the records.
Again, I cannot conclusively determine the question of whether ADED is a "custodian" of the records in question, such that it would have to either retain or obtain them to satisfy the FOIA request. Only a fact finder presented with evidence as to the facts could make this determination.
One final issue requires discussion in response to your question about whether the records are subject to public inspection if located at ADED. As mentioned previously, the FOIA is not a "records retention" law (see Ops. Att'y. Gen. 2001-340 and 2000-220) and does not require any particular time period during which agencies must maintain records. Other state statutes may govern this issue however. With respect to the ADED's obligation to maintain records, A.C.A. § 15-4-203(b)(1) provides that: "[t]he [Arkansas Economic Development] commission . . . shall keep a public record of its transactions, findings, and determinations." This statute may be said to place an affirmative duty on the ADED to maintain records.[2] To the extent the records were created under the auspices of the "Arkansas Delta Development Commission," a similar record-keeping requirement governs its records. See A.C.A. § 15-4-2605(b) ("[t]he commission . . . shall keep a public record of its transactions, findings, and determinations").
In my opinion, therefore, this statute places an affirmative duty on the part of officials at ADED to maintain a public record of its transactions, findings and determinations. I have not found any precedent interpreting the scope of this requirement. Although authority over this particular subject matter may not be invested in the Department by state or federal law, once placed within the Department's purview, this statutory requirement attaches. I must therefore point out that I believe that ADED could not transfer the records in question to the Governor's office without maintaining its own public record.[3] It might be successfully contended that the wholesale transfer of records by the ADED violates the more straightforward requirement of A.C.A. §15-4-203(b)(1), without regard to whether ADED remains a "custodian" of the records for purposes of the FOIA.
The second part of your third question is whether the records in question are exempt if located in the Governor's office. In my opinion the answer to this question is "yes." As set out above, the "working papers" exemption can apply to documents in the possession of the Governor even if the documents were received from third parties. See again, Ops. Att'y. Gen. 92-346; 93-166 and Bryant v. Mars, supra. Federal law places this subject matter squarely within the Governor's purview and in my opinion the documents are properly characterized as "working papers" in his hands. Even if the facts show that ADED is a "custodian" of the records in question, the remedy, in my opinion, would be to re-transfer the records from the Governor's office to ADED, where they would be open to public inspection. This remedy would not defeat the fact, however, that the documents are "working papers" and therefore exempt from public inspection in the hands of the Governor.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] This issue will be discussed in response to Question 3.
[2] Section 15-4-203 (b)(1) places the duty of record retention on the Arkansas Economic Development Commission, rather than the Department. The Commission is charged with the duty of administering the law of which A.C.A. § 15-4-203 is a part. The Commission, however, may delegate duties to the Director of the Department. A.C.A. § 15-4-206 (b).
[3] The § 15-4-203(b)(1) records retention requirement predates the FOIA. As such, any exemptions in the FOIA shielding public records at ADED would allow withholding of public records despite the requirements of § 15-4-203(b)(1). There is in my opinion, however, no applicable FOIA exemption shielding the records if located at ADED, and § 15-4-203(b)(1) is therefore operative.